AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Jose Fernando FLORES RANGEL, Jose HERNANDEZ, and Alejandro Vargas VALENCIA<br><br>*Defendant(s)* | Case No. **8:22MJ1100CPT** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 1-2, 2022__ in the county of __Hillsborough__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21:846 and 841(b)(1)(A) | conspiracy to possess with intent to distribute a controlled substance, which violation involved 5 kilograms or more of a mixture and substnace containing a detectable amount of cocaine |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

DEA TFO Antonio Gonzalez
*Printed name and title*

Affidavit submitted by email and attested to me as true and accurate via telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3)

Date: 02/03/2022

_____
Judge's signature

City and state: Tampa, Florida

Hon. Christopher P. Tuite
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Antonio Gonzalez, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer with the Drug Enforcement Administration and a Detective with the Hillsborough County Sheriff's Office. I have been employed with the DEA since March 2019 and the Hillsborough County Sheriff's Office since October of 2000. I am presently assigned to the Tampa Division where my duties include investigating violations of Federal laws relating to narcotics.

2. This affidavit is being submitted in support of a criminal complaint charging Jose Fernando FLORES RANGEL, Jose HERNANDEZ, and Alejandro Vargas VALENCIA with conspiracy to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). This affidavit does not contain all of the information pertaining to this investigation and merely provides probable cause for a court finding. I have personally participated in this investigation described below and am familiar with the information contained in this affidavit either through personal observations or those of other law enforcement officers.

3. All events described below occurred within the Middle District of Florida.

## PROBABLE CAUSE

4. In January 2022, a cooperating defendant[1] (CD) identified a Hispanic male known to the CD as "Gordo" as a source of supply for multiple kilograms of cocaine. The CD advised that Gordo was shipping large quantities of cocaine from California to the Middle District of Florida. Law enforcement identified "Gordo" as Jose Fernando FLORES RANGEL.

5. On February 1, 2022, law enforcement instructed the CD to meet with FLORES RANGEL to discuss FLORES RANGEL delivering kilograms of cocaine to the CD. FLORES RANGEL arrived with two unknown men, later identified as Jose HERNANDEZ and Alejandro Vargas VALENCIA. The meeting took place in a parking lot. During the meeting all four discussed

---

[1] The CD is a DEA CD. The CD was established with DEA in January 2022. The CD has a felony conviction for possession and distribution of more than 500 gram of cocaine. On January 14, 2022, the CD was detained during a federal search warrant at his/her residence and was question by law enforcement about his/her involvement in an active federal investigation for the distribution of large quantities of cocaine, heroin, methamphetamine, and fentanyl pills. The CD agreed to cooperate fully with law enforcement with the goal of hopefully receiving credit for his work during future federal proceedings. The CD has been truthful with investigators and his/her information has been independently corroborated. The CD has made statements against his/her personal interest which furthers my belief that the information provided is truthful and reliable.

2

the future drug transaction. FLORES RANGEL told the CD that he had a total of six kilograms of cocaine available for sale. FLORES RANGEL asked the CD if he/she wanted two and the CD replied that he/she actually wanted all six. The CD and FLORES RANGEL agreed to conduct the transaction at a later date. This meeting was audio-recorded and also surveilled simultaneously by law enforcement.

6. Following the meeting, law enforcement surveillance identified 1117 Windmill Harbor Way, Apartment 103, Brandon, Florida as a possible residence for the three individuals after they were observed entering the location.

7. On February 2, 2022, law enforcement began surveillance at 1117 Windmill Harbor Way, Apartment 103. Surveillance agents saw FLORES RANGEL, HERNANDEZ and VALENCIA traveling to and from the residence. At approximately 3:20 p.m., the CD placed a recorded phone call to FLORES RANGEL and requested two kilograms of cocaine. FLORES RANGEL confirmed he was in possession of the cocaine and advised he would bring them to the CD in an hour. At this time, the CD was equipped with audio/video recording equipment. The CD and the CD's garage were searched for illegal contraband prior to and following the transaction with negative results.

3

8. At approximately 3:36 p.m., surveillance saw VALENCIA exiting Apartment 103 with a rolling suitcase. VALENCIA walked to a Costco parking lot approximately three blocks away. There, VALENCIA met with HERNANDEZ and FLORES RANGEL. All three entered a vehicle (which appeared to be an Uber or some other rideshare), which traveled to a Culver's restaurant located at 2470 South Falkenburg Road Tampa, FL, about a mile away. The Culver's restaurant is located next to the Extra Space Storage business (the businesses share a parking lot).

9. Surveillance saw HERNANDEZ take possession of the rolling suitcase and walk in the direction of the Extra Space Storage business. HERNANDEZ entered the storage facility and remained inside for approximately 10 minutes. While HERNANDEZ was inside, VALENCIA and FLORES RANGEL stood near the entrance to the Extra Space Storage facility and were looking around. In my training an experience, I believe that both men were doing counter-surveillance looking for law enforcement. In addition, I believe that VALENCIA walking to the Costco parking lot, meeting with HERNANDEZ and FLORES RANGEL, and then all three traveling by vehicle to the Culver's parking lot (instead of simply traveling straight from Apartment 103 to the Culver's lot) was another counter-surveillance tactic used in attempt to identify and confuse law enforcement.

4

10. After about 10 minutes, HERNANDEZ exited the Extra Space Storage facility and entered a black sedan after placing the rolling suitcase in the trunk of the vehicle. FLORES RANGEL and VALENCIA entered a maroon SUV. Officers believe both vehicles were Ubers or some other form of rideshare.

11. Law enforcement surveilled both vehicles traveling in the direction of the CD's location, but both took separate routes. Again, in my training and experience, I believe this was another technique designed to confuse law enforcement. Approximately 40 minutes later, FLORES RANGEL and VALENCIA were dropped off at the CD's residence and met with the CD in the garage. As they met with the CD, FLORES RANGEL told the CD that the cocaine would be arriving soon in an Uber.

12. Approximately 5 minutes later, HERNANDEZ arrived at the residence in a black sedan and removed the suitcase from the trunk of the vehicle. Officers monitoring electronic surveillance of the meeting saw HERNANDEZ entering the garage and meeting with FLORES RANGEL, VALENCIA, and the CD, who were seated together at a picnic table. HERNANDEZ took out two kilograms of cocaine from the rolling suitcase and placed them on the table for the CD. The CD examined the kilograms of cocaine, and FLORES RANGEL agreed to give the CD the cocaine on

5

consignment for payment the following day. FLORES RANGEL, VALENCIA, and HERNANDEZ left the residence together in a vehicle owned by the CD.

13. Law enforcement met the CD and seized the approximately two kilograms of cocaine. Law enforcement conducted a chemical field test of the cocaine, which was positive for cocaine.

14. Surveillance observed FLORES RANGEL, VALENCIA, and HERNANDEZ travel to the International Mall in Tampa, where they were arrested. FLORES RANGEL was identified via his California driver's license, Valencia was identified via his passport, and HERNANDEZ identified himself verbally to agents.

15. At approximately 6:54 p.m., law enforcement confirmed with the Extra Space Storage facility management that Jose HERNANDEZ had rented Unit 2131 on January 20, 2022. Agents obtained a state search warrant for Unit 2131 and searched it. Inside, agents found approximately 4 kilograms of cocaine. Law enforcement conducted a chemical field test which was positive for cocaine.

12. Based on the foregoing, I believe that probable cause exists to believe that Jose Fernando FLORES RANGEL, Jose HERNANDEZ and Alejandro Vargas VALENCIA committed a violation of 21 U.S.C. §§ 846 and

841(b)(1)(A). Therefore, I respectfully request that the Court approve the attached criminal complaint and issue an arrest warrant.

*Antonio Gonzalez*
Antonio Gonzalez
Task Force Officer
Drug Enforcement Administration

Affidavit submitted by email and attested to me as true and accurate via telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this __3__ day of February, 2022.

*Christopher P. Tuite*
HON. CHRISTOPHER P. TUITE
UNITED STATES MAGISTRATE JUDGE

7